[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 28, 2005
THOMAS K. KAHN
CLERK

No. 03-15501

NLRB No. 12-CA-23262

SHORE CLUB CONDOMINIUM ASSOCIATION, INC.
a.k.a. SC CONDOMINIUM ASSOCIATION, Inc.,

Petitioner-Cross-Respondent,

versus

NATIONAL LABOR RELATIONS BOARD,

Respondent-Cross-Petitioner.

_____

Petitions for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

_____

(February 28, 2005)

Before CARNES and COX, Circuit Judges, and STROM,[*] District Judge.

STROM, District Judge:

_____

[*] Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

This case is before the Court on the petition of the Shore Club Condominium Association, Inc. ("the Association"), to review and set aside an order of the National Labor Relations Board ("the Board"). The Association, a nonprofit Florida corporation, provides maintenance and security services to the owners and residents of the Shore Club Condominium. The condominium property consists of a recreational area and two residential towers in Fort Lauderdale, Florida. The two residential towers, which contain 192 units and an above-ground garage below each tower, are located at 1901 and 1905 North Ocean Drive. The recreational area, which includes beach property, a recreational building, and a pool, is located at 1912 North Ocean Drive. The Association employs a lead maintenance employee and four other maintenance employees, including one who functions primarily as a painter, and three cleaners who perform janitorial functions.

On April 3, 2003, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 390, AFL-CIO ("the Union") filed a petition with the Board seeking certification as the collective-bargaining representative of the Association's maintenance employees. The Association opposed the Union's petition, claiming that the unit sought was inappropriate because it consisted of domestic employees, who are excluded by Section 2(3) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 151 et seq.

Following an evidentiary hearing on April 17, 2003, the Regional Director issued a decision finding the following unit appropriate for the purpose of collective bargaining: "All full-time and regular part-time maintenance employees, including but not limited to the main or lead maintenance employee, painters and cleaners, employed by the [Association] at its facility in Ft. Lauderdale, Florida, excluding all office employees, security employees, guards and supervisors as defined in the Act." The Regional Director then conducted a secret-ballot election in the specified unit on June 11, 2003, in which there was a 5-0 vote in favor of representation by the Union. Thus, on July 22, 2003, the Regional Director certified the Union as the exclusive collective-bargaining representative of the Association's maintenance employees.

Following the certification, the Union requested bargaining and the Association refused. The Union then filed an unfair labor practice charge, asserting that the Association's refusal to bargain violated the Act. Upon an investigation, the Board's General Counsel issued a complaint alleging that the Association violated Sections 8(a)(5) and (1) of the Act by refusing to bargain with the Union. The Association filed an answer admitting its refusal to bargain, but arguing that the Board had improperly certified the Union. On September 30, 2003, the Board granted the General Counsel's motion for summary judgment and ordered the Association to bargain with the Union. The Board held that the employees in question were not

domestic employees within the meaning of Section 2(3) of the Act, and therefore the Association violated Sections 8(a)(5) and (1) of the Act by refusing to recognize and bargain with the Union.

The Association filed a petition for review on October 29, 2003, arguing that the Board erred when it failed to hold that the unit employees were domestic employees excluded from the Act's coverage by Section 2(3). The Board filed a cross-application for enforcement of the Board's order on November 25, 2003. We find that the Association's position is contrary to established Eleventh Circuit precedent and hold that the Board's order must be enforced.

Standard of Review

The Board's finding of an unfair labor practice "must be upheld if it is based upon substantial evidence contained in the record taken as a whole, and based upon reasonable inferences drawn from the facts as found." NLRB. v. Imperial House Condominium, Inc., 831 F.2d 999, 1006 (11th Cir. 1987). "Because of the Board's 'special competence' in the field of labor relations, its interpretation of the Act is accorded substantial deference." Id. at 1005, citing Pattern Makers' League of North America v. NLRB, 473 U.S. 95, 100, 105 S. Ct. 3064, 3068, 87 L. Ed. 2d 68 (1985). "[T]he remedy chosen by the Board must 'be given special respect by reviewing courts.'" Imperial House, 831 F.2d at 1006, citing NLRB v. Gissel

Packing Co., 395 U.S. 575, 612 n.32, 89 S. Ct. 1918, 1939 n. 32, 23 L. Ed. 2d 547 (1969). "So long as the Board has made a plausible inference from the record evidence, we will not overturn its determinations, even if we would have made different findings upon a *de novo* review of the evidence." Cooper/T. Smith, Inc. v. NLRB, 177 F.3d 1259, 1261 (11ᵗʰ Cir. 1999).

Discussion

Section 2(3) of the Act excludes from the definition of "employee" anyone employed "in the domestic service of any family or person at his home." 29 U.S.C. § 152(3). The Association argues that the employees at issue in this case are "domestic" because they work for the owners in their individual home units, and in the common areas, which the Association claims are owned by the individual unit owners. The Association employs a total of five employees who perform various maintenance and cleaning services. The lead maintenance employee is responsible for the installation, repair and maintenance of various equipment in the common areas of the buildings, but his job occasionally requires him to enter an individual resident's unit to perform maintenance on air conditioning drain lines and condensation lines. The Association also employs a full-time painter who maintains the paint on the exterior and in the common areas of the buildings. The painter performs some additional painting for individual residents within their units, but he does that work

-5-

on his own time and is compensated by the resident rather than the Association. Finally, the Association employs three cleaners that are responsible for cleaning the common areas, such as the elevators, lobbies, catwalks and stairwells, and collecting newspapers from the trash bin for recycling.

The Association argues that the Board erred in finding that these employees are not "domestic" employees within the meaning of Section 2(3) of the Act. However, in 30 Sutton Place Corp., 240 NLRB 752, 753 n.6 (1979), the Board held:

> [T]here is a substantial difference between employment by a single homeowner and employment by a cooperative or condominium entity. In the first instance, an individual and personal relationship is created between the homeowner and the employee; in the second instance, the employee's relationship with the employer, the cooperative or condominium entity, is no different from that of an employee performing similar work for an apartment house or office building entrepreneur. "Domestic service implies employment on an individual and personal basis and cannot be enlarged to include a maintenance crew or clerical staff for a [47] unit housing complex." Success Apartments, Inc. v. UAW, Local 376, 99 LRRM 3169, 3171 (Conn. Sup. Ct., 1978).

See also Ankh Services, Inc., 243 NLRB 478 (1979).

Subsequently, in NLRB v. Imperial House Condominium, Inc., this Court followed the Board's decisions in 30 Sutton Place and Ankh, in rejecting a Condominium's contention that employees involved in housekeeping activities were exempt from the Act's coverage as "domestic" employees under Section 2(3):

> It is clear that the Condominium's housekeepers are not employed by the unit owners in whose home the housekeepers provide their services. Although the housekeepers do render services to the unit owners, they nevertheless perform these services on behalf of and are clearly employed by the Condominium, a Florida corporation.

831 F.2d 999, 1005 (11th Cir. 1987). Based on this Court's decision in Imperial House, we believe there is substantial evidence to support the Board's finding that the employees at issue in this case are employed by the Association, rather than the individual unit owners. Thus, the Board was warranted in holding that these employees are not exempt from the Act because they are not domestic employees within the meaning of Section 2(3).

The Association argues that the United States Supreme Court's decision in NLRB. v. Kentucky River Community Care, Inc., 532 U.S. 706, 121 S. Ct. 1861, 149 L. Ed. 2d 939 (2001), requires that we reverse our holding in Imperial House. The Association makes a strong effort to persuade us that the employees at issue in

this case should be considered domestic employees who are exempt from the Act. However, we do not believe that the Supreme Court's decision in <u>Kentucky River</u> requires reversal of the <u>Imperial House</u> decision.

The Association makes additional arguments under Florida law and the United States Constitution. Specifically, the Association argues that applying the Act to its employees would destroy the concepts of state sovereignty and federalism, and would violate the United States Constitution in the following ways: (1) if the Union demanded money, this could be a "taking" of the unit owners' property in violation of the Fifth Amendment; (2) if the Union demanded information, this could be an unlawful search in violation of the Fourth Amendment; (3) by striking, the Union could prevent someone from living in their own home, which would constitute a violation of due process; and (4) the Union could interfere with the rights of the unit owners in a manner that would be inconsistent with due process and equal protection. The Court has considered the Association's arguments, and finds them without merit.

Finally, the Association claims that it was prejudiced by rulings of the hearing officer which precluded it from introducing certain evidence at the hearing. For instance, the Association claims that it should have been allowed to question a Union representative about whether he lived in a condominium, and that it should have been allowed to introduce Exhibit 7 in its entirety into evidence. Upon

consideration of these arguments, the Court finds that the rulings were within the discretion of the hearing officer, and do not constitute prejudicial error. Thus, the Association's arguments on this issue are also rejected.

## Conclusion

We conclude that there is substantial evidence to support the Board's finding that the employees at issue in this case are not exempt from the Act because they are not domestic employees within the meaning of Section 2(3). Moreover, we reject the Association's constitutional and evidentiary arguments. Therefore, the Association's petition to set aside the Board's order is denied, and the Board's cross-application for enforcement of the order is GRANTED.